<u>NOT FOR PUBLICATION</u>

<u>CLOSING</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

ANTHONY P. FALCO,           :
                            :
    *Plaintiff,*           :
                            :
      v.               :
                            :
DAWN ZIMMER, et al.,        :
                            :
    *Defendants.*          :
_____:

Civil Action No. 13-1648


OPINION

ARLEO, UNITED STATES DISTRICT JUDGE

### I.   INTRODUCTION

**THIS MATTER** comes before the Court by way of Defendants Dawn Zimmer and the City of Hoboken's ("Defendants") Motion to Dismiss. Dkt. No. 64. The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion is **GRANTED**.

### II.   FACTS

Defendant Dawn Zimmer has been the Mayor of Hoboken, New Jersey since July 2009. Dkt. No. 58, Second Am. Compl. ("SAC") ¶ 23. Plaintiff Anthony P. Falco ("Plaintiff") served as Chief of Police for the Hoboken Police Department ("HPD") from June 2009 until his retirement in July 2014. Id. ¶ 13.

Plaintiff became Hoboken's Chief of Police on June 18, 2009. Id. ¶ 21. He was appointed by the New Jersey Department of Community Affairs, as opposed to then-Mayor of Hoboken

David Roberts, due to the fact that Hoboken was under the control of a State fiscal monitor at that time.  Id. ¶ 22.

Upon his appointment, Plaintiff believed that he would receive an employment contract with the City.  He based this belief on his understanding that, when previous Chiefs of Police in Hoboken were appointed, they received simple contracts or memoranda of agreement with the City.  Id. ¶ 25.  These contracts were typically very short.  Id.  They usually set the Chief of Police's compensation, explained which provisions in the HPD police officer's collective bargaining agreement also applied to the Chief (who is not usually a party to the agreement), and other terms related to the Chief's terminal pay and leave at the conclusion of his service.  Id. Plaintiff did not receive any such agreement during his time as Chief of Police.  Id. ¶¶ 27, 29.

Plaintiff, however, received certain benefits that the other HPD superior officers received, including: (1) an annual uniform stipend (for the purchase and maintenance of professional clothing) of $1,300.00; (2) an annual attendance incentive (known as a "sick incentive") of $1,500.00; and (3) an annual $500.00 court time and preparation payment.  Id. ¶ 31.  He also allegedly began accumulating overtime hours.  Id. ¶ 47.

The City then began to withhold certain of these benefits roughly three years later.  In 2012 the City provided all other superior officers with the annual uniform stipend and sick incentive, but did not provide Plaintiff with the same.[1]  Id. ¶ 33.  The City never notified Plaintiff of its intent to withhold these incentives, and did not provide him with an opportunity to be heard on the matter. Id. ¶ 34.  And upon the finalization of a new collective bargaining agreement with the City in 2011, all HPD officer received an increase in compensation through 2012, which applied retroactively

---

[1] As discussed below, the City continued to provide Plaintiff the court time and preparation payments until January 2013.  Id. ¶ 176.

to 2008.  Plaintiff, however, did not receive any increase.  Id. The City also refused to pay him for any overtime he believes he accrued, stating that the Chief of Police is not entitled to overtime payments.  Id. ¶¶ 47-51.

In June 2012, Plaintiff communicated with City officials regarding his compensation.  Id. ¶ 36.  In August, the City's Office of Corporation Counsel ("OCC") wrote a letter stating that the City had no obligation to provide the Chief with an agreement "and there will be no negotiation regarding any proposed contract's terms."  Id. ¶ 38.  A month later, OCC attorneys changed course and informed Plaintiff that Zimmer was in receipt of a draft agreement, though they indicated that it was "not a priority" for her.  Id. ¶ 39.  But in January 2013, the City repeated its original position that it was not obligated to provide the Chief with an agreement because he is not a member of any bargaining unit, and stated that "Chief Falco's base salary is higher" than HPD's most senior captain's.  Id. ¶¶ 40, 43.   The City also noted that "the department's senior officers will be receiving a base salary increase of 1.95%, beginning in 2013.  As is required by statute, Chief Falco will receive that raise in his base salary in 2013."  Id. ¶ 40. However, Falco's salary did not increase after the discussion, though he alleges on information and belief that the other superior officers' salary did.  Id. ¶ 41.

Meanwhile, during his tenure through early 2013, Plaintiff alleges that Zimmer actively interfered with his position at HPD.  Id. ¶ 70.  He alleges that Zimmer suggested officer layoffs and attempted to impose policies making it more difficult for the HPD to hire new offices.  Id. ¶¶ 141-155.  Plaintiff then asserts that Zimmer directed Hoboken Director of Public Safety ("DPS") Angel Alicea to circumvent Plaintiff's authority, acquire confidential information to which the DPS is not entitled, and exert inappropriate influence over HPD's hiring practice.  Id. ¶¶ 74-76, 81. For example, Plaintiff alleges that DPS Alicea did not notify him of upcoming events involving

the police department, improperly gained access to internal affairs information about HPD officers, communicated directly with officers who reported to Plaintiff, and attempted to obtain information about HPD's daily operations and records.  Id. ¶¶ 83, 85-89, 93-104, 108-125.  Plaintiff also alleges that he and HPD became targets of complaints from other director-level staff, all of whom reported to Zimmer.  Id. 130-138.

Later in 2013, Plaintiff was involved in two law suits against the City.  In March 2013, Plaintiff filed this instant lawsuit against Zimmer and the City.  Id. ¶¶ 163-64.  The City continued to refuse to pay Plaintiff his annual uniform or sick incentive for 2013.  Id. ¶¶ 170, 176, 317.  In September 2013, the City also agreed to pay certain qualified officers for overtime accrued in 2012, but continued to refuse to pay Plaintiff any overtime.  Id. ¶ 180.

In December 2013, Plaintiff testified in state court in connection with a lawsuit brought against him and the City by DPS Alicea.  Id. ¶ 167.  During his testimony, Plaintiff answered questions about Zimmer pertaining to allegations Plaintiff asserted in his March complaint.  Id. ¶ 168.  Plaintiff's answers included allegations that Zimmer harbors political animus towards him because he is a member of "Old Hoboken" whereas she and her political base are members of "New Hoboken."[2]  Id. ¶¶ 60-62.  In January 2014, the City again refused to pay Plaintiff his annual uniform allowance and sick incentive, but also refused to pay his court time allowance for that year.  Id. ¶¶ 171-73.

In July 2014, Plaintiff retired as Chief of Police in accordance with the State's mandatory retirement age of 65.  Id. ¶¶ 183-185.  Upon retirement, Plaintiff expected to receive certain so-

---

[2] Falco defines the division as such: "'Old Hoboken' – individuals whose families have been in Hoboken for decades or even generations, comprised of small business owners, blue-collar workers, and many members of the uniformed services – and 'New Hoboken,' comprised of young and middle-aged professionals originally from elsewhere in New Jersey or New York, many of whom commute to New York City for the workday."  Id. ¶ 61.

4

called "Payments Upon Retirement" that other HPD officers received, such as unused-days payment, terminal leave pay, and pay for accrued overtime hours.  Id. ¶¶ 186-87.  Plaintiff asserts he is the only HPD officer who did not receive these retirement compensations.  Id. ¶ 189.

Plaintiff filed the instant action on March 18, 2013.  Dkt. No. 1.  Plaintiff filed the Second Amended Complaint ("SAC") on February 5, 2015 asserting 42 causes of action.  Dkt. No. 58. Generally, Plaintiff assert a litany of constitutional violations under 42 U.S.C. §§ 1983 and 1985 and violations under state laws.  These claims all relate, in one form or another, to Defendants' refusal to pay the requested benefits and interference with his department.  Defendants filed their motion to dismiss on March 6, 2015.  Dkt. No. 64.[3]

## III.   STANDARD

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id.  The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[3] Defendants have labeled this motion a "motion to dismiss" and have not yet filed an answer to the SAC.  Their briefing, however, refers to a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The Court will construe their motion as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**IV.   ANALYSIS**

Plaintiff's claims can be grouped as follows: (1) violation of his due process rights under 42 U.S.C. § 1983 (Counts 1-9); (2) violation of the Fourteenth Amendment Takings Clause (Counts 10-16); (3) equal protection violations under § 1983 (Counts 17-24); (4) First Amendment violations under § 1983 (Counts 25-32); (5) conspiracy under 42 U.S.C. §1985 (Count 33); (6) violation of the New Jersey Civil Right Act, N.J.S.A. 10:6-1 et seq. (Count 34); (7) violation of N.J.S.A. 34:19-1 et seq. (New Jersey Conscientious Employee Act) (Count 35-37); (8) breach of public duty (Count 38); (9) breach of implied covenant of good faith and fair dealing (Count 39); (10) tortious interference with contract and prospective economic advantage (Counts 40-41); and (11) payment of attorneys' fees pursuant to 42 U.S.C. § 1988 (Count 42).  The Court will address each group in turn.

### A.  Due Process Claims

Plaintiff's first nine counts allege that Defendants violated his procedural and substantive due process rights. [4]

### i.  Procedural Due Process

Plaintiff alleges that Defendants violated his procedural due process rights by refusing, without due process of law, to pay him (1) the uniform allowance; (2) sick leave; (3) court standby time; (4) payment upon retirement; (5) accrued overtime; and (6) a raise in 2013.[5]

---

[4] Plaintiff asserts Counts 1, 2, 4 and 5 under only procedural due process; Counts 3, 6, and 9 under both procedural and substantive due process; Counts 7 and 8 under only substantive due process; and Counts 10 to 16 under the Takings Clause of the Fourteenth Amendment.

[5] Counts 10 to 16 raises these same claims under the Takings Clause of the Fourteenth Amendment but Plaintiff does not defend this theory in his brief.  In any event, Plaintiff does not state a claim under the Takings Clause because he does not allege that Defendants used his withheld money for a public purpose.  See Scott v. Philadelphia Hous. Auth., No. 10-4723, 2011 WL 1791095, at *6

Defendants argue that Plaintiff's entitlement, if any, to these employment benefits are not constitutionally protected property interests.  The Court agrees.

To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) the procedures available to him did not provide due process of law.  Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).  Where, as here, the plaintiff asserts a protected property interest in a benefit, he or she must show a legitimate claim of entitlement protected by the due process clause of the Fourteenth Amendment.  Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978) (citations omitted); Pence v. Mayor & Twp. Comm. of Bernards Twp., 453 F. App'x 164, 167 (3d Cir. 2011).  A claim of entitled is not created by the Constitution, but is created and defined by "existing rules or understandings that stem from an independent source such as state law."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).

The Third Circuit recognizes two types of rights relevant here that create protected property interests under the Due Process clause: (1) a contract characterized by the quality of either the extreme dependence, or permanence and sometimes both; and (2) where the contract contains a provision that the state entity can terminate the contract only for cause.  Pence, 453 F. App'x at 167-68 (citing Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991)) (internal quotation marks omitted).

---

(E.D. Pa. May 11, 2011) (holding "the Takings Clause is inapplicable when a plaintiff sues for unpaid wages" and rejecting claim because plaintiff did not allege that the State used the withheld money for lawful public purpose).

Here, Plaintiff does not have a constitutionally protected property interest in the benefits to which he claims entitlement.  First, Plaintiff contends that his uniform allowance, sick leave, and right to a raise in 2013 are constitutionally protectable property interest because they are entitlements grounded in state law.  Plaintiff argues that N.J.S.A. § 40A:14-147 protects these interests by preventing their removal except for cause.  The Court, however, does not find any support for Plaintiff's argument in that statute.  It reads, in relevant part:

> Except as otherwise provided by law, no permanent member or officer of the police department or force shall be removed from his office, employment or position for political reasons or for any cause other than incapacity, misconduct, or disobedience of rules and regulations established for the government of the police department and force, nor shall such member or officer be suspended, removed, fined or reduced in rank from or in office, employment, or position therein, except for just cause as hereinbefore provided and then only upon a written complaint setting forth the charge or charges against such member or officer.

N.J.S.A. § 40A:14-147.  The statute may protect Plaintiff from removal of office, suspension, or fines without cause, but it does not create any such right for the benefits Plaintiff demands.  See Pence v. Mayor of Bernards Twp., No. 08-2312, 2010 WL 2925901, at *4 (D.N.J. July 21, 2010) (finding no protectable property interest in sick leave grounded in state statute).  He therefore has not established a legitimate claim of entitlement to the uniform allowance, sick leave, or the raise.

Plaintiff next asserts an alternative basis for entitlement to the 2013 raise.  He argues that N.J.S.A. § 40A:14-179 protected his right to receive a pay raise when the subordinate officers received one in 2012.  Here, too, the Court finds no basis in the statute.  It provides the following:

> Notwithstanding any other law to the contrary whenever there is a police department organized in any political subdivision of this State and a chief of police appointed to be the executive head of such department, the starting base salary of said chief of police and the deputy chief shall be set at a rate that is higher than the highest base salary of the ranking police officer next in command below the chief of police or deputy chief of police as appropriate. Thereafter,

8

> whenever new base salary ranges are set by the governing body or appointive authority, unless the chief of police or deputy chief shall consent to a lesser adjustment, the base salary for the chief of police and his deputy chief shall be adjusted to ensure that their base salaries remain higher than the base salaries of other ranking supervisory officers in the department.

N.J.S.A. § 40A:14-179.  By its plain language, this statute ensures only that the chief of police is paid more than his subordinate officers.  It does not require that the chief of police receive a raise simply because his subordinate officers do.  Because the SAC only alleges that other officers received raises, and does not allege that their salaries surpassed Plaintiff's, N.J.S.A. § 40A:14-179 does not create a protected property interest in the 2013 raise.  See SAC ¶ 40 (explaining City's letter stating that "'Chief Falco's base salary is higher' than that of the most senior captain in HPD").

Plaintiff next argues that the remaining benefits—court standby time, payment upon retirement, and accrued overtime—should be considered part of his base salary, and asserts that the failure to pay these benefits constituted diminution of his protected pay.[6]  Plaintiff relies on DePascale v. New Jersey, 211 N.J. 40 (2012) to support this contention.  The court in DePascale held that requiring state judges to increase their pension contributions without receiving corresponding salary increases violated the New Jersey Constitution's No-Diminution Clause.  DePascale, 211 N.J. at 44.  It does not suggests either that Plaintiff's requested benefits are part of a base salary or that the withholding of these benefits violates due process.  The Court is therefore

---

[6] Plaintiff also relies on the definition of "base salary" in N.J.S.A. 34:13A-16.7.  But that statute, which concerns arbitration awards, defines "base salary" as including "any other item agreed to by the parties, or any other item that was included in the base salary as understood by the parties in the prior contract."  Here, Plaintiff points to no prior contract between him and Defendants that would read base salary as including the benefits at issue.

not persuaded that the refusal to pay Plaintiff for these benefits was an unconstitutional diminution in salary.

Plaintiff's argument ultimately boils down to his belief that he would receive these benefits just because his predecessors and other officers received them.  See, e.g., SAC ¶¶ 5, 31, 33, 41. He has therefore not shown anything "more than an abstract need or desire" or a "unilateral expectation" for them.  See Pence, 453 F. App'x at 167; Rolon v. Henneman, 517 F.3d 140, 148 (2d Cir. 2008) (Sotomayor, J.) ("Rolon has submitted no rules or understandings to prove that he had a legitimate claim to overtime.  He offered only a conclusory assertion in his complaint that his alleged economic loss 'includ[ed] the predictable loss of overtime pay . . . .'") (internal citation and quotation marks omitted).  He may well have grounds in state contract law to address these grievances, but he does not assert an entitlement that would give rise to a procedural due process claim.

### ii.  Substantive Due Process

Plaintiff alleges that Defendants violated his substantive due process rights by interfering with and exercising impermissible authority over his department.[7]  Defendants respond that employment rights such as these are not sufficiently fundamental to warrant substantive due process protection.  The Court agrees.

To prevail on a substantive due process claim that challenges non-legislative state action, "a plaintiff must establish as a threshold matter that he has a protected property interest to which

---

[7] Although not entirely clear from the Second Amended Complaint, Plaintiff's substantive due process claims are not based on Defendants' withholding of employment benefits.  Opp'n Br. at 27 ("Plaintiff does not assert a substantive due process right to "employment benefits," but rather to the ability to exercise his authority without illegal civilian influence.").  Even if Plaintiff did raise such a claim, he would not prevail because "an interest in employment benefits is not sufficiently fundamental to warrant substantive due process protection."  Pence, 2010 WL 2925901, at *10; see McCullough v. City of Atl. City, 137 F. Supp. 2d 557, 566 (D.N.J. 2001).

the Fourteenth Amendment's due process protection applies." Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139-40 (3d Cir. 2000) (Alito, J.). "Whether a property interest is protected for purposes of substantive due process is a question that is not answered by reference to state law. Rather . . . [the property interest] must be 'fundamental' under the United States Constitution." Hill, 455 F.3d at 234 n.12 (citing Nicholas, 227 F.3d at 140). If the interest is not "fundamental," the governmental action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process. Nicholas, 227 F.3d at 142.

Here, any employment right Plaintiff may have to run his department unfettered does not constitute a fundamental property interest. In Nicholas, the Third Circuit found that employment rights are not entitled to substantive due process protection, noting that it views "public employment as more closely analogous to those state-created property interests that this Court has [previously] deemed unworthy of substantive due process." Nicholas, 227 F.3d at 143. This approach to employment rights in the area of substantive due process is in accord with that taken by the majority of the circuits. See Pence, 2010 WL 2925901, at *9 (collecting cases).

Despite Nicholas, Plaintiff argues that a police chief's authority is uniquely substantive in nature. But he fails to cite any binding authority that support this novel proposition.[8] Plaintiff next cites several New Jersey statutes articulating the police chief's authority as support for his claim. But it is the Constitution, not state laws, that determines whether a right is fundamental. See Hill, 455 F.3d at 234 n.12 (citing Nicholas, 227 F.3d at 140). Plaintiff has not established any

---

[8] With the exception of quotes to black letter law, Plaintiff only cites a single New Jersey Chancery Court decision. See Quaglietta v. Borough of Haledon, 182 N.J. Super. 136 (Ch. Div. 1981). There, the court held that the police "chief cannot be demoted or removed from his office without just cause and without procedural and substantive due process." Quaglietta, 182 N.J. Super. at 143. Here, Plaintiff was neither demoted nor removed from office. Quaglietta therefore has no bearing on this case.

such right grounded in the Constitution, and, therefore, the substantive due process claims are dismissed.

### B.  Equal Protection Claims

Counts 17 to 24 assert equal protection violations under § 1983.  Specifically, Plaintiff asserts that Defendants committed equal protection violations when they singled Plaintiff out by refusing to pay his uniform allowance, sick incentive, court standby time, overtime, raise, or payment upon retirement without a rational basis for doing so.

Defendants argue that Plaintiff does not allege membership in a protected class and he cannot claim "class of one" status.  The Court agrees.

### i.  Traditional Equal Protection Claim

In order to establish a prima facie case of discrimination under the Equal Protection Clause, the plaintiff must prove that he or she is a member of a protected class and that he or she received different treatment than that received by other similarly situated individuals.  <u>Oliveira v. Twp. of Irvington</u>, 41 F. App'x 555, 559 (3d Cir. 2002).  Here, Plaintiff does not allege that he is a member of any protected class.  In his brief, for the first time, Plaintiff alleges that he was retaliated against because of he is a member of a certain church in Hoboken— apparently an attempt to invoke his belonging to a protected class based on religion.  Because Plaintiff does not make any reference to this fact in his pleading, the Court will not consider it.[9]  Accordingly, Plaintiff does not state a claim under a traditional equal protection framework.

---

[9] This is one of several instances where Plaintiff inserts facts into the brief that are not averred in the complaint.  The Court will not consider those factual allegations not stated in the Amended Complaint.  Plaintiffs may not "amend" the complaint through statements made in an opposition brief.  <u>See</u> <u>Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988).

### ii.  "Class of One" Claim

Under a "class of one" theory, a plaintiff may claim, absent membership in a class, that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).  This theory, however, is not available to Plaintiff, as it is inapplicable in the public employment context.  Scavone v. Pennsylvania State Police, 501 F. App'x 179, 181 (3d Cir. 2012) (citing Engquist v. Oregon Dep't of Agric., 128 S.Ct. 2146 (2008)).

Plaintiff, citing to no authority, argues that the instant case is distinguishable because of "the uniqueness of the position of chief of police."  Opp'n Br. at 30.  The Court is not persuaded by Plaintiff's call for a carve-out to Engquist.  In Engquist, the Supreme Court expressly stated that a "class of one" theory is unavailable in all public employment contexts, regardless of the particular occupation.  See Engquist, 128 S.Ct. at 2156; Skrutski v. Marut, 288 F. App'x 803, 809 (3d Cir. 2008) (recognizing that the "[class of one] legal avenue is now clearly foreclosed by the Supreme Court's decision that such claims are not cognizable in the public employment context"); see also Patterson v. City of Earlington, 650 F. Supp. 2d 674, 682 (W.D. Ky. 2009) (rejecting chief of police's "class of one" claim and concluding that Engquist applies equally to all public employment "class of one" claims).  Accordingly, Plaintiff's equal protection claims are dismissed.

### C.  First Amendment Claims

In Counts 25 to 32, Plaintiff asserts violations under the First Amendment.  He alleges that Defendants denied his employment benefits in retaliation for (1) filing this lawsuit and testifying in the case involving DPS Alicea; and (2) his actual or perceived political beliefs and affiliations.

### i. Retaliation for Participation in Law Suits

Defendants argue that Plaintiff has not sufficiently alleged any retaliatory action for engaging in protected speech.  The Court agrees.

"To establish a First Amendment retaliation claim, a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action, which, if both are proved, shifts the burden to the employer to prove that (3) the same action would have been taken even if the speech had not occurred." Munroe v. Cent. Bucks Sch. Dist., No. 14-3509, --- F.3d ----, 2015 WL 5167011, at *9 (3d Cir. Sept. 4, 2015) (internal citations omitted).

Defendants do not contest that Plaintiff's participation in the law suits constitute protected speech activity.  The Court accordingly agrees that Plaintiff engaged in protected speech.  See Green v. Philadelphia Hous. Auth., 105 F.3d 882, 887 (3d Cir. 1997) (holding that voluntary appearance before a court constitutes a matter of public concern); Lane v. Franks, 134 S. Ct. 2369, 2378 (2014) ("Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes.").

Plaintiff next must show that the speech was a substantial or motivating factor in the alleged retaliatory action.  "The key question . . . is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)) (internal quotation marks omitted).  The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than de minimis or trivial.  Id. at 170 (citing Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)).  Although the line where trivial conduct ends and substantive constitutional violations begin is not entirely clear,

the Third Circuit has explained that decisions relating to "promotion, transfer, recall and hiring" are actionable, whereas "criticism, false accusations, or verbal reprimands" are not.  Brennan, 350 F.3d at 419.

Here, Plaintiff asserts the following retaliatory acts in connection with filing his complaint in March 2013 and giving testimony in December 2013: (1) generally withholding and diminishing his compensation; (2) exercising impermissible authority over his department; and (3) denial of Payment Upon Retirement in July 2014; and (4) denial of the $500 standby court time payment.

The first two acts cannot state a claim for retaliation.  When considering whether an act was retaliatory, "the timing of the retaliation" is relevant.  Brennan, 350 F.3d 420.  Defendants' refusal to offer him a raise or other benefits could not be retaliation for his participation in these suits in 2014 because Plaintiff alleges that these acts all occurred before that time.  In 2012, Defendants stopped paying his uniform payment, sick incentive pay, and did not increase his salary with the other officers.  SAC ¶ 33.  That same year, Defendants refused to pay him for overtime, and refused again in 2013.  Id. ¶¶ 47-51, 180.  Similarly, Plaintiffs allegations that Zimmer interfered with his operations begin in 2009.  See, e.g., id. ¶ 70.  Plaintiff then asserts that Defendants "intensified and escalated" their conduct, SAC ¶ 165, but offers no new facts beyond those that began prior to 2013, aside from Defendants' failure to inform Plaintiff about the City's holiday tree-lighting that year.  Id. ¶ 181.  These acts therefore cannot be retaliatory.  See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997) (Alito, J.) (finding no retaliation where "must of what Robinson characterizes as retaliation for her EEOC complaint is in fact alleged to have occurred before she filed the complaint") (original emphasis).

The third act—refusal to pay Plaintiff's Payment Upon Retirement—occurred after Plaintiff's participation in the law suits and therefore could be causally connected.  Even so, it is

not a plausible allegation of retaliation.  Plaintiff did not allege that he was entitled to the payment.  He merely asserts a unilateral expectation that he would receive it because other HPD officers did when they retired.  See SAC ¶ 187.  Nor does he allege that Defendants ever promised or suggested that Plaintiff would receive the payment.  Without alleging any legitimate right or reasonable expectation to the payment, Plaintiff cannot plausibly allege that Defendants withheld the payment in retaliation.

The fourth act—the denial of court standby time in 2014—also fails to state a retaliation claim.  The Court finds that the refusal to grant Plaintiff this particular benefit was only a de minimis act.  First, the $500 standby court payment was a stipend offered in addition to his salary as Chief of Police of Hoboken.  The City's decision to withhold that added benefit was therefore not a diminution in his salary.  Second, Plaintiff's expectation of receiving the stipend was tenuous as best.  He was not entitled to it by contract, the City had already decided to take away his other benefits, and he was only going to serve as Chief of Police for a few more months given his required retirement in July 2014.  Third, this is not just one act in a campaign of retaliatory harassment, given that the other three acts Plaintiff points were not retaliatory at all.  Cf. Suppan, 203 F.3d 1286 (finding potential violation based on series of harassments).  Fourth, Plaintiff does not direct the Court to any factual analogous case that would support his position, and he does not argue in his brief how the withholding of this stipend, in particular, would deter a person of ordinary firmness from exercising his rights.  Accordingly, even looking at the record in the light most favorable to Plaintiff (as we must at this stage in the proceedings), we cannot conclude that withholding the standby court pay would have deterred a person of ordinary firmness from exercising his First Amendment rights.

Accordingly, Plaintiff has not sufficiently alleged a claim of retaliation for engaging in protected speech.

**ii. Retaliation for Political Affiliations**

With respect to the political belief claims, Defendants argue that Plaintiff has not adequately articulated affiliation with any cognizable political group.  The Court agrees.

To establish a political association retaliation claim under the First Amendment, the plaintiff must meet a three-part test: (1) the plaintiff must establish that "she was employed at a public agency in a position that does not require political affiliation"; (2) the plaintiff must show that she engaged in conduct protected by the First Amendment; and (3) the plaintiff must prove that the constitutionally-protected conduct was a substantial or motivating factor for the adverse employment action.  Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013) (citing Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007)).

Defendants concede that Plaintiff works in a position that does not require political affiliation.  See id. ("[Plaintiff] was employed as an officer with the JCPD, a position where political affiliation is not "an appropriate requirement for the effective performance of the public office involved.") (internal citations omitted); but see Wilson v. Moreau, 492 F.3d 50 (1st Cir. 2007) (holding police chief was a policymaking employee whose political affiliation is pertinent to the position).  The Court will accordingly consider the first factor met.

Plaintiff must next show that he "engaged in constitutionally protected conduct."  Galli, 490 F.3d at 272.  Typically, this factor contemplates situations where the plaintiff is required to join or support the political party in power, retaliated against for supporting a losing candidate or for failing to engage in the political process whatsoever.  See id. at 272-73 (collecting cases). Plaintiff's SAC does not raise any such factual predicate.  Rather, the only political association

mentioned in the SAC is Plaintiff's affiliation with "Old Hoboken" and the perceived political

rivalry with "New Hoboken." See SAC ¶ 61-63 (describing "a perceived political rivalry between

'Old Hoboken' . . . and 'New Hoboken'" and explaining his and Zimmer's respective

affiliations).[10]   That is not a cognizable political association.   Indeed, it does not refer to any

political class or affiliation at all.   As Plaintiff defines it, "Old Hoboken" is comprised of

"individuals whose families have been in Hoboken for decades or even generations . . . small

business owners, blue-collar workers, and many members of the uniformed services," whereas

"New Hoboken" is "comprised of young and middle-aged professionals originally from elsewhere

in New Jersey or New York, many of whom commute to New York City for the workday." Id. ¶

61.   Plaintiff's association with this amorphous, non-political group does not constitute protected

political affiliation.   See Farber v. City of Paterson, 440 F.3d 131, 138 (3d Cir. 2006) (stating in §

1985 claim that "the class [Plaintiff] attempts to assert is so subjectively defined and 'wholly

indeterminate' that '[t]here is simply no way to characterize [it] as an identifiable segment of the

community by reference to any objective criteria, and, hence, it cannot serve as a cognizable

class'").   Accordingly, Plaintiff does not assert a claim for retaliation based on political association.

### D.  Section 1985 Conspiracy Claim

Plaintiff next asserts in Count 33 that Defendants conspired to interfere with his civil rights.

See 42 U.S.C. § 1985.   He does not specify which of § 1985's three subsection he relies on, though

---

[10] Plaintiff mentions an ostensible connection between him and the former mayor: "Chief Falco
became Chief during the administration of Mayor David Roberts, who was perceived to be a
representative of Old Hoboken.   As a city council member at that time, Zimmer was a frequent
and vociferous critic of Roberts.   Upon information and belief, she associates Plaintiff with
Roberts, her former political rival."   SAC ¶ 63.   To the extent Plaintiff alleges this under a support-
of-losing-candidate theory, the Court is not persuaded.   Plaintiff's bare allegation that "upon
information and belief" Zimmer "associated" him with the former mayor, without more, does not
state a plausible claim for political association under the First Amendment.   See Twombly, 550
U.S. at 555.

in his opposition brief he only discusses § 1985(3).  The Court will accordingly construe his claim as one for conspiracy under subsection (3).[11]

Defendants argue that Plaintiff has failed to sufficiently plead a conspiracy.  The Court agrees.

Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  To state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States."  Farber, 440 F.3d at 134.

For the reasons set forth above, Plaintiff has failed to plead that he was deprived of equal protection of the law.  See Sec. IV.B, supra.  In addition, Plaintiff has not alleged facts from which this Court could infer that the City and Zimmer engaged in a conspiracy.  "To constitute a conspiracy, there must be a 'meeting of the minds.'"  Startzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 205 (3d Cir. 2008) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970)).  It must likewise "contain supportive factual allegations . . . The factual allegations supporting the conspiracy claim may not be generalized or conclusory."  Ivan v. Cnty. of Middlesex, 595 F. Supp. 2d 425, 484 (D.N.J. 2009) (citing Rose v. Bartle, 871 F.2d 331, 366

---

[11] It is equally unclear whether Plaintiff raises a conspiracy claim under § 1983 under the same count of the SAC.  Nonetheless, Plaintiff cannot assert a § 1983 conspiracy claim because he did not first show an actual violation under § 1983.  Ivan v. Cnty. of Middlesex, 595 F. Supp. 2d 425, 483 (D.N.J. 2009).

(3d Cir. 1989)).  Here, Plaintiff merely asserts that the Defendants "conspired among themselves and with others with respect to the acts and omissions described in Counts One through Thirty-Two," and "conspired among themselves and with others, as described above, to prevent and hinder Plaintiff in the discharge of the duties of his office of Chief of Police."  SAC ¶¶ 353-54. Plaintiff discusses Zimmer's alleged conduct and conversations Plaintiff had with members of the City's departments, but fails to allege any specific facts from which the Court can infer that a "meeting of the minds" occurred between Zimmer, the City, or any other unnamed individuals to deprive Plaintiff of his rights.  Accordingly, Plaintiff has failed to state a claim for conspiracy under § 1985(3).

### E.  § 1988 Fees Claim

In Count 42, Plaintiff moves for attorneys' fees under 42 U.S.C. § 1988.[12]  This section, however, does not provide for attorney's fees independent of a violation of one of the statutes enumerated in that provision.  Cnty. of Morris v. Nationalist Movement, 273 F.3d 527, 535 (3d Cir. 2001).  Because Plaintiff did not sufficiently allege claim under either §§ 1983 or 1985, Plaintiff is not entitled to fees under § 1988.

### F.  State Law Claims

Because Plaintiff's §§ 1983 and 1985 claims have been dismissed, Plaintiff's remaining claims all sound in state statutory or constitutional law.  There is no diversity of citizenship between Plaintiff and Defendants, as all parties are New Jersey citizens or entities, so jurisdiction under § 1332 cannot lie.  See SAC at 1.  The Court will exercise its discretion and will decline to exercise supplemental jurisdiction over Plaintiff's remaining claims.

---

[12] Plaintiff also requests fees under state law in Count 42.  The Court will not address those claims in light of the dismissal of the state claims.  See Sec. IV.F, infra.

"The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "The decision to retain or decline jurisdiction over state-law claims is discretionary" and "should be based on considerations of judicial economy, convenience and fairness to the litigants." Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (citations omitted). Additionally, the federal court should be guided by the goal of avoiding "[n]eedless decisions of state law . . . both as a matter of comity and to promote justice between the parties." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). "Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." Walls v. Dr. Blackwell, No. 05-4391, 2005 WL 2347124, at *3 (D.N.J. Sept. 22, 2005) (citing Gibbs, 383 U.S. at 726).

The Court finds it appropriate to decline jurisdiction over Plaintiff's remaining state law claims. In order to adjudicate these claims, the Court would need to determine whether the provisions of New Jersey's Constitution, Conscientious Employee Act, and Civil Rights Act were violated. The remaining claims involve interpretation of wholly state-based claims sounding in tort and contract. Additionally, as this case is still at an early stage in the litigation, "dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties." Freund v. Florio, 795 F.Supp. 702, 711 (D.N.J. 1992); see also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3567.3 (3d ed.) ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal question] claims are dismissed before trial").

Accordingly, the Court will dismiss Plaintiff's state law claims in accordance with 28 U.S.C. § 1367(c)(1).

## V.   CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss, Dkt. No. 64, is

**GRANTED**.  An appropriate Order accompanies this Opinion.

**Dated: November 12, 2015**

*/s Madeline Cox Arleo*

**Hon. Madeline Cox Arleo**
**United States District Judge**