# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ANTHONY P. FALCO,**

*Plaintiff,*

v.

**DAWN ZIMMER, et al.,**

*Defendants.*

Civil Action No. 13-1648

OPINION

    **THIS MATTER** comes before the Court by way of Defendants Dawn Zimmer, the City of Hoboken, and Jon Tooke's (collectively, "Defendants") motion to dismiss Plaintiff Anthony Falco's Fourth Amended Complaint ("FAC"). ECF No. 131. In this Complaint—his fifth bite at the apple—Plaintiff Anthony Falco, the former Hoboken Chief of Police, alleges a constitutional claim against the City, the Mayor, and one of her appointees. Specifically, he alleges that Defendants withheld his benefits and interfered with the operation of his department because he supported the Mayor's opponents, spoke out against the Mayor, and because of his religion. Since Falco has not plausibly alleged any constitutional violation, the motion is **GRANTED**.

## I. BACKGROUND

    This case arises out of long-standing disagreements between a former Chief of Police and Mayor of Hoboken in the course of their professional relationship.[1] Plaintiff Anthony Falco became Chief of Police of the Hoboken Police Department ("HPD") on June 18, 2009. FAC ¶ 30. Falco's support of then-Mayor Peter Cammarano was known through his attendance of public and

---

[1] Since the allegations that form the background of this case were discussed in depth in the Court's prior opinions, an abbreviated version of the facts are included here. See Falco v. Zimmer, No. 13-1648, 2015 WL 7069653 (D.N.J. Nov. 12, 2015) (dismissing second amended complaint) ("Falco I"); Falco v. Zimmer, No. 13-1648, 2016 WL 7175594 (D.N.J. Dec. 7, 2016) ("Falco II").

private political events including fundraisers, strategy sessions, and door-to-door canvassing on behalf of Cammarano. Id. ¶ 21. Cammarano won an election against Defendant Dawn Zimmer in June, and became Mayor on July 1, 2009. Id. ¶¶ 29, 32. Later that month, however, Cammarano was arrested on federal corruption charges in connection with "Operation Big Rig," and Zimmer was appointed Acting Mayor. Id. ¶¶ 33-34. Falco alleges, on information and belief, that Zimmer disapproved of Falco's promotion to Chief because he supported Cammarano, her political rival. Id. ¶¶ 37-38.

The heart of Falco's FAC is that he experienced a series of retaliatory actions for taking positions contrary to those of Mayor Zimmer. He alleges that Zimmer, together with Defendant Jon Tooke, Director of the Department of Law and Public Safety ("DPS") for Hoboken, id. ¶ 4, worked together to take action against him. Specifically, Falco points to the following instances of protected speech: (1) supporting Zimmer's opponent, Peter Cammarano in the 2009 election; (2) opposing Zimmer's budget reduction plan that included police layoffs in July 2010; (3) appointing a pastor who had publicly criticized Zimmer to be the HPD chaplain also in 2010; (4) initiating this lawsuit in March 2013; and (5) testifying in Hudson County Superior Court in the matter of Alicea v. Hoboken, a discrimination and retaliation suit against Zimmer and the City in December 2013.

Without tying specific retaliatory acts to specific instances of protected speech, Falco generally alleges that Defendants retaliated against him by interfering in the daily operations of the HPD from 2009 to 2011; canceling the 2012 St. Patrick's Day parade, cutting certain compensation items and denying him a request for a contract in 2012, and delaying disbursement of his Payment Upon Retirement in 2014.

Falco filed this action on March 18, 2013.  ECF No. 1.  He filed the Second Amended Complaint on February 5, 2015 asserting 42 causes of action.  ECF No. 58.  The Court granted Defendants' motion to dismiss, partially with prejudice.  <u>See</u> Order dated November 12, 2015, ECF No. 82.  The Court permitted Falco to re-file certain claims, including those raising First Amendment retaliation and equal protection violations.  <u>Id.</u>  On January 26, 2016, Falco filed a Third Amended Complaint ("TAC"), asserting 19 causes of action.  ECF No. 93. The Court again granted Defendants' motion to dismiss, allowing him to re-plead his First Amendment retaliation claims.  <u>See</u> Order dated December 7, 2016, ECF No. 127.  On January 20, 2017, Falco filed the FAC (the operative complaint), stating one cause of action for First Amendment retaliation.  ECF No. 131.  Defendants moved to dismiss.  ECF No. 139.

## II.  Legal Standard

When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff.  <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008).  Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." <u>Id.</u>  The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  The allegations in the complaint "must be enough to raise a right to relief above the speculative level."  <u>Id.</u>  Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

## III.  Analysis

The FAC largely repeats the allegations asserted in Falco's previous complaints, and

asserts one sole cause of action for First Amendment Retaliation pursuant to 42 U.S.C. § 1983. Defendants argue that Falco's allegations should be dismissed because they are not causally related, and would not deter a person of ordinary firmness from exercising his or her rights. The Court agrees.

To plead a First Amendment retaliation claim, a plaintiff must allege "(1) that [the plaintiff] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); see also Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). "The determination of whether government conduct or speech has a chilling effect or an adverse impact is an objective one—we determine whether a similarly situated person of ordinary firmness reasonably would be chilled by the government conduct in light of the circumstances presented in the particular case." Wagner v. Holtzapple, 101 F. Supp. 3d 462, 481 (M.D. Pa. 2015) (citing Baltimore Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006)). But "[t]his objective inquiry is not static across contexts" and "must be tailored to the different circumstances in which retaliation claims arise." Bracey v. Price, No. 09-1662, 2012 WL 6015727, at *11 (W.D. Pa. Dec. 3, 2012) (quotations omitted). Mere dislike cannot form the basis for First Amendment retaliation. See Miller v. N. Belle Vernon Borough, No. 08-1435, 2010 WL 4388069, at *5 n.7 (W.D. Pa. Oct. 29, 2010) ("[T]he First Amendment does not forbid retaliation based, for example, in 'generic dislike.'"); Monz v. Rocky Point Fire Dist., 853 F. Supp. 2d 277, 287 (E.D.N.Y. 2012) (granting defendants' motion of judgment as a matter of law following jury trial in First Amendment retaliation action in part because "dislike is not an illegal motive.").

Falco's 226-paragraph FAC fails to satisfy the second and third elements of a First Amendment retaliation claim. Specifically, Falco has not alleged that Zimmer's allegedly retaliatory actions were sufficient to deter a person of ordinary firmness from speaking out, nor that he was personally chilled from engaging in protecting activity. Indeed, Falco's vehement, longstanding opposition to Falco throughout the duration of his tenure undermines the idea that Zimmer's alleged retaliation was sufficient to deter a similarly situated person—here, a Police Chief—of ordinary firmness from exercising his First Amendment rights. In addition, Falco has not alleged any causal relationship between the alleged retaliatory actions and his protected activities. Here, the FAC lays out a pattern of disagreement between Falco and Zimmer over issues affecting the day to day activities of the Hoboken Police Department, a 2010 budget reduction plan, Falco's entitlement to a written contract, and the cancelation of the St. Patrick's Day Parade of 2012. Although—as Falco claims—Zimmer may have harbored a "dislike" of Falco over these disagreements, such dislike is not a causal basis for First Amendment retaliation.

In sum, the FAC presents a narrative of an acrimonious relationship between a Chief of Police and the Mayor of Hoboken. Although Falco emphasizes Falco's decision-making power as Mayor throughout his FAC, this is no David and Goliath story. Rather, it's a story of two high-ranking public officials who butted heads over policy issues and the operation of the police department. This simply does not state a cause of action for First Amendment retaliation.

Falco has bolstered the FAC with several alleged instances of retaliation. The Court considers each in further detail below.

### A. Interference with Daily Police Operations

Although not entirely clear from the FAC, Falco first alleges that beginning in the Fall of 2009, and continuing through the Fall of 2011, Zimmer interfered in the operations of the police

department in retaliation for his support of Zimmer's political opponents in the campaign that took place earlier that year. He alleges that she "micro-manage[d]" the department and attempted to "marginalize" him. Id. ¶ 62. Specifically, he alleges that Angel Alicea, Director of DPS before Tooke and a Zimmer appointee, wrote a memorandum to Falco discussing an on-going confidential Internal Affairs investigation and criticizing Falco for failing to notify DPS of the investigation. Id. ¶ 74. On another occasion, Falco alleges that Alicea distributed a confidential investigation report to civilian City employees without names and sensitive information redacted. Id. ¶ 75. Falco also alleges that the City's Office of Corporation Counsel ("OCC") "intimidated" an acting Chief into disclosing confidential information while Falco was on vacation in 2010. Id. ¶ 83. Falco further alleges that in April 2011, he received a memo from the City's Law Director ordering an investigation into the police department in reference to a police officer being invited to a political event. Id. ¶ 81. Falco claims that all of these actions were in violation of N.J.S.A. 40A:14-118, a state law, which articulates that direct responsibility for the efficiency and routine day to day operations of a police force lies with the Chief. Id. ¶ 60.

This theory fails for primarily the same reasons as stated in the Court's previous opinion. See Falco II, 2016 WL 7175594, at *4. Simply put, the alleged interference would not deter a person of ordinary firmness from speaking out. McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) ("The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.").

As an initial matter, the FAC shows that Falco's speech was not chilled by the alleged interference in the HPD operations. Indeed, after these events occurred, he continued to speak out against Zimmer and the City, even intensifying his opposition by formally complaining to the

Hudson County Prosecutor. He later opposed Zimmer's budget reform plan in 2010, supported a Zimmer opponent for city councilman in 2010, openly criticized the parade cancellation in 2012, initiated this lawsuit in spring of 2013, supported Ruben Ramos for mayor in 2013, and testified unfavorably about Zimmer's administration in Alicea v. Hoboken in 2013. Falco's prolonged, vehement, public criticism of Zimmer cuts against any inference that Defendants' actions were sufficient to deter an ordinary person from exercising his constitutional rights. See Reed v. Scheffler, 218 F. Supp. 3d 275, 281 (D.N.J. 2016) (explaining that a First Amendment retaliation claim fails where the "[p]laintiff does not allege that [the Defendant's] statement caused him to be fearful or exercising his rights to speak to the council or the newspaper thereafter."); Roseberry v. City of Philadelphia, No. 14-2814, 2016 WL 826825, at *13 (E.D. Pa. Mar. 3, 2016) (explaining that a First Amendment retaliation claim dismissed where "it is undisputed that Plaintiff was not deterred from her First Amendment rights as she filed a federal lawsuit in July 2012, and another internal complaint with the Police Department in October 2012.").

Furthermore, many of the alleged instances of interference—disclosure of confidential police information to civilians, Alicea's inquiry into an internal investigation, the filing of an Open Public Records Act into the HPD, requests for the HPD's rollcalls, FAC ¶¶ 72-74, 83—were not directed at Falco specifically. Such broad actions that affect an entire department could not be fashioned to deter one individual from speaking out.

Finally, the alleged interference was de minimus. In general "petty slights, minor annoyances, and simple lack of good manners" are not actionable. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Repeatedly, courts have declined to find adverse action where the "alleged retaliatory acts were criticism, false accusations or verbal reprimands." Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (finding that the following allegations of

retaliation, were not actionable as instances of First Amendment retaliation: transferring out of headquarters, threatening to make the plaintiff's life miserable, assigning plaintiff to ten-hour watch duties, telling others that the plaintiff was on medication that causes psychotic behavior, refusing to use the plaintiff's title or capitalize his name, requiring plaintiff to perform menial tasks, citing the plaintiff for "conduct unbecoming" charges, and subjecting the plaintiff to daily hostilities after he filed a complaint, including making derogatory remarks); see also Revell v. City of Jersey City, 394 F. App'x 903, 905 (3d Cir. 2010) (finding that none of the following allegations of retaliation rose to the level of retaliatory harassment: threats against the plaintiff's brothers, ordering of the plaintiff to stop sending letters, requiring her to undergo a random drug test, requiring her to furnish a report explaining her one-day absence, calling her a "bad catalyst" and "half a cop," and transferring her from the property room to patrol duty which did not affect cut in rank, pay or hours); Johnson v. Heimbach, No. 03–2483, 2003 WL 22838476, at *6 (E.D. Pa. Nov. 25, 2003) (finding that evaluations containing false perceptions, derogatory written comments, inadequately grounded conclusions of job effectiveness, and unkind words from colleagues would not deter a person of ordinary firmness from exercising First Amendment rights), aff'd, 112 F. App'x 866 (3d Cir. 2004).

Here, Falco's allegations of interference reflect nothing more than Defendants' differences in opinion over the operation of the police department. Falco's receiving an instruction from Zimmer not to allow a police officer to appear at a community meeting, and demanding information from Falco on the arrest of a professional athlete, FAC ¶¶ 81-82 do not rise to the level of a campaign of retaliatory harassment. Falco has not pointed to any tangible penalties as a result of any perceived interference. He therefore cannot establish a retaliation claim based on interference with his department.

### B. Saint Patrick's Day Parade Cancellation

Falco next alleges that Zimmer canceled the 2012 Saint Patrick's Day parade in retaliation against Father Santora of Our Lady of Grace Catholic Church ("OLG"), who had spoken out against Zimmer.[2] Id. ¶¶ 121-22. Since Falco, in his capacity as Chief of Police, named Father Santora to be the Chaplain of HPD, Plaintiff alleges that this is somehow First Amendment retaliation against him. Id. ¶¶ 119-20, 123. Specifically, Falco alleges that Zimmer then retaliated against his appointment of Father Santora by canceling Hoboken's annual Saint Patrick's Day Parade in 2012. Id. ¶ 127.

Falco's theory of retaliation based on his affiliation with Father Santora fails for the same reasons that his retaliation based on religion theory failed previously: he has not pled causation. In Falco II, the Court noted:

> Nothing in the TAC creates a plausible nexus between his membership in the Church and the alleged retaliation . . . . [T]he fact that a single City-run event, which is tangentially related to his church, was canceled several years after Zimmer and Falco began working together does not salvage his claim.

2016 WL 7175594, at *6.

The same is true for the FAC's allegations. Again, assuming appointing a priest as chaplain constitutes "protected activity," Falco has not pointed to anything connecting the parade cancellation to his appointment of Father Santora. There are no allegations that the cancellation of the 2012 parade affected Falco—or the members of OLG—more than the general population of Hoboken. Based on these allegations, the Court cannot reasonably infer that Falco's appointment

---

[2] In his TAC, Falco alleged a cause of action for retaliation based on religion for his affiliation with Our Lady of Grace Catholic Church ("OLG") and his association with the Church's pastor, Father Santora. See TAC ¶¶ 160-64. Now, Falco has amended the allegation to include his affiliation with OLG as another instance of retaliation against protected speech. FAC ¶¶ 119-27.

of Father Santora was a "substantial or motivating factor" in the cancellation.[3] See Hill v. Borough of Kutztown, 455 F.3d 225, 243 (3d Cir. 2006). In addition, the alleged retaliation was insufficient to deter a person of ordinary firmness from practicing his or her rights. Indeed, Falco alleges that he continued to speak out after the cancellation of the parade. He publicly criticized the decision to cancel the parade, including to the St. Patrick's Day Parade Committee. FAC ¶ 127. He continued to criticize Mayor Zimmer in 2013 by filing this lawsuit and testifying in the Alicea matter.

### C. Loss of Compensation Items and Denial of Written Contract

Falco alleges that in 2012, Defendants retaliated against him by denying him compensation items. In 2009, 2010, and 2011, he received certain payments that were also given to other superior officers of HBD, "consistent with City ordinance and the City's long-established custom and practice." Id. ¶ 131. These items included an annual uniform stipend (for the purchase and maintenance of professional clothing) of $1,300.00, an annual attendance incentive (known as a "sick incentive") of $1,500.00, and an annual $500.00 court time and preparation payment. Id. Falco alleges that in January 2012, for the first time, the City withheld his uniform stipend. Id. ¶ 133. He also didn't receive a sick incentive pay or a raise that year. Id. ¶¶ 134-35. Falco alleges that such dips in compensation stemmed from his lack of written contract that specified the terms of his employment. Id. ¶ 146. He further alleges that Defendants retaliated against him by denying his request for a written contract in 2012. Id. ¶ 147. He alleges that—unlike his predecessors—

---

[3] Falco also alleges that around this time, on March 24, 2011, his daughter, an HPD Sergeant, arrested the then-Director of Parking who was an ally of Mayor Zimmer. FAC ¶¶ 93-100. He claims that this arrest was also the basis for subsequent retaliatory actions. FAC ¶ 14(f). But as Defendants correctly note, Falco has not pointed to his own engagement in any protected speech in connection with the arrest. See Opp'n at 16-17. Therefore, the arrest cannot support a claim for First Amendment retaliation.

he "alone is the only Hoboken chief of police . . . to be denied the security that comes from having a written agreement with his civilian employer." Id. ¶ 131. Although he does not explicitly identify which of his actions these allegedly retaliatory acts were aimed at, the Court construes the FAC to plead that the acts were in retaliation against all of Falco's pre-2012 activities. These include his 2009 support of Zimmer's opponents, his 2010 report to the Hudson County Prosecutor, his 2010 support for Tim Occhipinti in his race for city councilman, and his 2010 opposition to the Zimmer's budget reduction plan.

Defendants argue that Falco's theory of retaliation based on the reduction of compensation, and the denial of a written contract fail for lack of causation. Def.'s Br. at 7-8. To satisfy the causal inquiry under the third prong of the test, a plaintiff must prove that his protected activity was "a substantial or motivating factor" in the retaliatory action. See Hill v. Borough of Kutztown, 455 F.3d 225, 243 (3d Cir. 2006). To establish the requisite causal connection, the plaintiff usually must prove one of two things: (1) "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" or (2) "a pattern of antagonism coupled with timing to establish a causal link." Lauren W., 480 F.3d at 267. If neither showing is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation.

Falco has not plausibly alleged any of these connections. Here, all of Falco's protected actions occurred in 2009 and 2010, but the alleged retaliatory denial of compensation did not occur until 2012. Falco has not explained why—despite having opportunities to take action in 2010 and 2011, Defendants waited until 2012 to engage in allegedly retaliatory behavior.

With respect to Falco's 2009 support of Zimmer's political opponents, the Court stated in Falco II:

He has not alleged "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action." He alleges that the speech at issue occurred sometime in 2009, but that the loss of benefits occurred, at the earliest, in 2012. This three-year lapse in time cuts against a causal link between the events.

Falco II, at *4 (internal citations omitted). The analysis is similar regarding Falco's 2010 activities, including his opposition to Zimmer's budget reduction plan, which Zimmer allegedly rebuffed in July 2010, and his support for Occhipinti in the 2010 Special Election. FAC ¶¶ 39, 107-08. As noted in Falco II, these events occurred nearly two years before Falco lost his first benefit 2012, and before he was denied a document setting forth the terms of his employment. See Falco II at *5. The FAC does not change the analysis.

For the first time in his FAC, Falco pleads that his compensation only changed following the hiring of Jon Tooke as Hoboken's Director of DPS in August 2011. FAC ¶ 128. Falco alleges that Tooke advised Zimmer to reduce his compensation, and that the earliest Zimmer could have done so following Tooke's recommendation is January 2012. FAC ¶¶ 130-33. But Tooke's involvement is irrelevant. Any decision affecting compensation ultimately lay with Zimmer, who held the same position at all relevant times.

Falco argues that the lack of temporal nexus does not undermine his claim because—as in Marra v. Philadelphia Hous. Auth.—there was an "intervening pattern of antagonism" towards him in the form of interference with the day to day operations of the HPD from 2009 on. Opp'n at 10-11 (citing 497 F.3d 286, 302-03 (3d Cir. 2007)), ECF No. 147. But once again, the instances of interference that Falco cites to would not deter a reasonable person of ordinary firmness from speaking out. Although "it matters not . . . whether each piece of evidence of antagonistic conduct is alone sufficient to support an inference of causation, so long as the evidence permits such an inference when considered collectively," Marra, 497 F.3d at 303, the Court is not persuaded that

the pattern of allegedly antagonistic acts here are little more than day to day workplace disagreements between two community leaders with opposing views.[4]

For the above reasons, Falco does not state a retaliation claim based the reduction in his compensation in 2012.[5]

### D.  Superstorm Sandy Pay and Payment Upon Retirement

Lastly, Falco alleges that from 2013 through his retirement in 2014, he continued to experience retaliation in the form of reduced compensation relative to others.  This includes the continued non-payment of the uniform, court standby, and sick leave benefits.   In January 2013, Falco discovered that he did not receive a 1.95% increase in compensation "even though other superior officers in HPD received pay raises effective as of January 1, 2013."  Id. ¶ 162.  However, he acknowledges that he eventually received the promised pay raise later in the year.  Id. ¶ 164.  Falco claims that in September 2013, he was denied "the equivalent of five days' pay" for work during Superstorm Sandy despite being a "sworn law enforcement officer who worked certain shifts."  Id. ¶¶ 190-91.  In addition, he did not receive uniform allowance and sick incentive from the City.  Id. ¶ 193.  Finally, Falco appears to allege that the City dragged its feet in paying him accrued compensation upon his retirement on July 1, 2014.  He states that he was owed in excess of $400,000.00 upon retirement, but did not receive it immediately.  Id. ¶¶ 215, 220.  However, he

---

[4] Furthermore, after the allegedly retaliatory change in compensation occurred in 2012, Falco continued to publicly criticize Mayor Zimmer.  He filed this lawsuit in the Spring of 2013, and later testified in the Alicea matter in the Fall of 2013.  This suggests that a similarly situated person of ordinary firmness would not be chilled by the actions.

[5] Nor can Falco allege that the continued non-payment of certain compensation items in 2013 and 2014 was somehow retaliation against his 2013 filing of this lawsuit or testimony in the Alicea matter.  As an initial matter, the timing shows that there was no causation.  Both the lawsuit and the testimony occurred after January of 2013, when he found out about the non-payment.  Second, there could be no causation between the 2013 protected activities and the alleged reduction in compensation because Falco alleges that the change in compensation first occurred in January 2012.  Therefore, the 2013 continued non-payment was not a change to his status.

did eventually receive a payment—although he does not say for how much—that was "substantially less than the full amount owed" in an "attempt at one final insult . . . as he headed into retirement." Id. ¶ 220. Falco again does not explicitly identify which of his actions these allegedly retaliatory acts were aimed at. The Court construes the FAC to plead that the acts were in retaliation against all of Falco's activities that occurred in 2012 or later. These include his filing of this lawsuit in March 2013, his support for the mayoral candidate Ruben Ramos in 2013, and his testimony in the Alicea v. Hoboken matter in December of 2013.

This theory fails for the same reasons as stated in the Court's prior opinions. See Falco I at 15-16; Falco II at *5. Namely, "the interference in operations and denial of most of the benefits predate the litigation activities in mid- to late-2013[6] . . . and Falco has not demonstrated a legitimate expectation of retirement payments." Id.

Falco has amended his pleadings regarding the payment of retirement benefits. However, these new allegations do not strengthen his theory. Previously, the Court noted that in his TAC, Falco "merely asserts a unilateral expectation that he would receive [a Payment Upon Retirement] because other HPD officers did when they retired . . . .Without alleging any legitimate right or reasonable expectation to payment, [Falco] cannot plausibly allege that Defendants withheld the payment in retaliation." Falco II, 2016 WL 7175594, at *5. Falco again does not make any new allegations that change the result. Instead, the FAC only makes clear that Falco did eventually receive his Payment Upon Retirement (he does not say when). FAC ¶ 220. Though he alleges that he received "substantially less than the full amount owed," without his identification of a more

---

[6] To the extent that Falco alleges the continued non-payment of his uniform allowance, sick incentive, and accrued vacation and personal days in 2013 and 2014 were retaliatory acts against his 2013 actions, this theory fails because he already stopped receiving these payments in January 2012. As such, there cannot be a causal relationship between non-payment in 2013 and 2014 and any of Falco's 2013 activities.

specific amount, the Court cannot determine if the delayed payment would be "sufficient to deter a person of ordinary firmness from exercising his or her rights."  Lauren W. ex rel. Jean W, 480 F.3d at 267.

Finally, Falco's FAC re-alleges that he did not receive overtime pay for service during Superstorm Sandy, which was given to "every sworn law enforcement officer who worked certain shifts."  FAC ¶¶ 190-92.  In Falco I, the Court dismissed this claim for lack of causal connection.  See Falco I, 2015 WL 7069653, at *8.  The Court noted that because he was first refused overtime in 2012, a subsequent refusal in 2013 could not reflect a retaliatory change in his compensation for his protected activity that occurred in 2013.  Id.  Falco cannot simply cure his pleading by omitting the City's previous denials of overtime pay from his FAC.  Moreover, as in his previous Complaints, Falco has not identified an entitlement to such compensation besides making the conclusory statement that he too was a "sworn law enforcement officer [who] satisfied the relevant work criteria."  FAC ¶ 191.

Accordingly, Falco has failed to state a claim for retaliation for reduced compensation in 2013 and 2014.[7]

## IV.   CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss Plaintiff Anthony Falco's Fourth Amended Complaint, ECF No. 139, is **GRANTED**.  As Plaintiff has been given many opportunities to replead, but the FAC continues to suffer from the same shortcomings identified in the Court's previous Opinions, the FAC is **DISMISSED with prejudice**.  An appropriate Order accompanies this Opinion.

---

[7] Because the Court finds that Falco has not stated a First Amendment retaliation claim, the Court does not reach Defendants' arguments for dismissal based on qualified immunity, the Entire Controversy Doctrine, and lack of custom or policy.  Defs.' Br. at 17-21.

**Dated: October [  ], 2017**

                                    */s Madeline Cox Arleo*
                                    **Hon. Madeline Cox Arleo**
                                    **UNITED STATES DISTRICT JUDGE**